# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. DANIKA ELIZABETH VANWAY, Appellant. | DIVISION ONE No. 80138-4-I UNPUBLISHED OPINION |

DWYER, J. — After a trial on stipulated evidence, Danika Vanway was convicted of possession of a controlled substance (methamphetamine) while she was on community custody. Vanway appeals, claiming that the trial court erred by denying her motion to suppress evidence of the methamphetamine discovered during a warrantless search of her backpack. Vanway asserts that the trial court improperly concluded that the search fell within the exception to the warrant requirement for searches of an arrestee's person conducted incident to arrest. Additionally, Vanway contends that RCW 69.50.4013—a criminal statute proscribing the possession of a controlled substance—violates due process because it is a strict liability offense. Her latter argument is without merit. However, the State did not prove that Vanway's backpack was an item that must have necessarily travelled with Vanway to jail. Thus, the State failed to establish that the search incident to arrest exception to the warrant requirement was applicable. Accordingly, we reverse.

I

On December 13, 2018, Officers Jason Tutchtone and Thaddeus Halbert observed a car parked in Everett's Henry Jackson Park while they were "conducting a check" from their patrol vehicle. Officer Tutchtone noticed that a man and a woman occupied the car. According to Officer Halbert, the car appeared to be "kind of out of place." Officer Tutchtone conducted a computer check of the vehicle's license plate number. This revealed a Department of Corrections arrest warrant for Danika Vanway. Although the license plate search indicated that Vanway was "associated with" the car, she was not the registered owner. The search also produced photographs of Vanway, which revealed that she had red hair. Officer Tutchtone observed that the woman inside the car appeared to have red hair.

Officer Halbert parked the patrol car behind the vehicle. Jazper Reece stepped out of the car from its driver's side door. Reece identified the passenger as "Danika," and Officer Tutchtone recognized Vanway sitting in the passenger seat. Upon identifying Vanway, Officer Tutchtone noticed a black backpack on the car floor that "appeared to be in between her right and left foot in the passenger compartment of the vehicle." Officer Tutchtone testified that "the backpack was touching [Vanway] . . . approximately from her ankles to roughly her kneecaps." Vanway's hands were occupied and she was not holding the backpack.

Officer Tutchtone then informed Vanway that she had a warrant out for her arrest and that he was placing her under arrest. Vanway exited the vehicle and

2

Officer Tutchtone placed handcuffs on her wrists. Officer Tutchtone then conducted a search of Vanway's person and advised her of the Miranda[1] rights. Vanway confirmed that she understood the Miranda rights.

Officer Tutchtone then asked Vanway whether the backpack in the vehicle belonged to her. Vanway confirmed that the backpack was hers. Officer Halbert removed the backpack from the vehicle and carried it over to the patrol vehicle. Officer Tutchtone began to search the backpack. At the time of the search, Reece was "seated on the sidewalk." Officer Halbert told Reece that he "was no longer needed in the area and . . . asked him to move along."

Officer Halbert then assisted Officer Tutchtone in searching the backpack. They found a purple cylinder that contained a substance appearing to be methamphetamine.

Officer Tutchtone testified that, either while or after searching a bag, his practice was to ask arrestees if they wanted their bags to travel with them to jail. Specifically, Officer Tutchtone stated:

> [U]sually, as we are arresting people that have possession of bags, we will search and ask them where they would want the bags to go. There are several opportunities, or choices; they can either go to the county jail with them, they can be impounded in our property room. Or if they have somebody on scene with them, they can choose to take whatever they want out of the bag and then leave the rest of the belongings with the person.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

However, Officer Tutchtone did not recall explaining these options to Vanway. After the search, Officer Halbert took Vanway to the Snohomish County Jail.[2]

The State charged Vanway with one count of possession of a controlled substance (methamphetamine) committed while on community custody. Prior to trial, Vanway moved to suppress the evidence of the methamphetamine, asserting that the search of her backpack was an invalid search incident to arrest. The trial court denied the motion to suppress. In its findings of fact and conclusions of law, the trial court concluded that the backpack was "immediately associated with [Vanway's] person and [Vanway] had actual or exclusive possession of the backpack at or immediately preceding the time of arrest." Following a bench trial on stipulated evidence, Vanway was convicted of possession of a controlled substance. The trial court sentenced her to three months of incarceration and 12 months of community custody.

Vanway appeals.

II

Vanway first contends that the trial court erred by denying her motion to suppress. Specifically, Vanway contends both that the backpack was not proved to be in her actual and exclusive possession immediately prior to the search and that the backpack was not proved to be an item that necessarily had to travel with her to jail. Because we deem the second question dispositive, we need not

[2] On the way to the county jail, Officer Halbert dropped Officer Tutchtone off at the north precinct so that Officer Tutchtone could weigh the methamphetamine and arrange for its storage pending trial.

address the first question. The State failed to meet its burden to establish that the search incident to arrest exception to the warrant requirement applied because the backpack was not proved to be an item that necessarily had to travel with Vanway to jail. Thus, the trial court erred by denying the motion to suppress.

A

In reviewing a trial court's decision on a motion to suppress, we determine whether the trial court's findings of fact are supported by substantial evidence. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is sufficient to persuade a fair-minded, rational person of the truth of the finding. State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Conclusions of law from an order pertaining to the suppression of evidence are reviewed de novo. State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002).

B

The Washington State Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. "Under article I, section 7, a warrantless search is per se unreasonable unless the State proves that one of the few 'carefully drawn and jealously guarded exceptions' applies." State v. Byrd, 178 Wn.2d 611, 616, 310 P.3d 793 (2013) (quoting State v. Bravo Ortega, 177 Wn.2d 116, 122, 297 P.3d 57 (2013)). The State's burden of proof in this context is a "heavy burden." State v. Parker, 139 Wn.2d 486, 496, 987 P.2d 73 (1999).

The warrant exception at issue is the exception for searches incident to arrest. There are two types of searches incident to arrest: "(1) a search of the arrestee's person (including those personal effects immediately associated with his or her person—such as purses, backpacks, or even luggage) and (2) a search of the area within the arrestee's immediate control." State v. Brock, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015). This case involves a search of the arrestee's person.

An item is part of an arrestee's person if the arrestee had "actual and exclusive possession at or immediately preceding the time of arrest." Byrd, 178 Wn.2d at 623. Furthermore, the scope of any exception to the warrant requirement "must track its underlying justification." Brock, 184 Wn.2d at 158. The justification for warrantless searches of the arrestee's person is that "there are presumptive safety and evidence preservation concerns associated with police taking custody of those personal items *immediately associated* with the arrestee, which will *necessarily* travel with the arrestee to jail." Brock, 184 Wn.2d at 155 (emphasis added). Accordingly, "the scope of an arrestee's person is determined by what must *necessarily* travel with an arrestee to jail, not what an officer *decides* to take to jail." State v. Alexander, 10 Wn. App. 2d 682, 694, 449 P.3d 1070 (2019), review denied, 195 Wn.2d 1002 (2020).

C

Here, the State failed to meet its "heavy burden" to prove that a warrantless search of Vanway's backpack fell within the exception to the warrant requirement for searches of an arrestee's person incident to arrest. Parker, 139

6

Wn.2d at 492-93, 496. Specifically, the State did not prove that Vanway's backpack was an item that necessarily had to go to jail with her.

At the hearing, the trial judge indicated a familiarity with State v. Alexander. In our opinion in Alexander, we held that a backpack was not within the scope of an arrestee's person because "[a third party,] about whom [the police officer] expressed no safety concerns, offered to take the backpack, and [the arrestee] desired that [the third party] take it." 10 Wn. App. 2d at 694. We reasoned that the "backpack was not an item immediately associated with [the arrestee's] person that would *necessarily* travel to jail with her." Alexander, 10 Wn. App. 2d at 694.

Similarly, at the time of Vanway's detention, Reece, the driver of the vehicle in which Vanway was a passenger, was sitting on a nearby sidewalk. Officer Tutchtone testified that his usual practice was to inform arrestees, either *while* or *after* searching a bag, that "they can choose to . . . leave [their] belongings with" another person "if they have somebody on scene with them." However, he also testified that he did not recall asking whether Vanway wanted to leave the backpack with Reece while she was taken to jail. And, in any event, Alexander requires that such an inquiry be made *before*, not *during* or *after*, a search. Just as a valid warrant must be extant prior to a search, so must the lawful justification for a warrantless search exist prior to the commencement of a search.

It is the State—not the defendant—that bears the "heavy burden" of proving that an exception to the warrant requirement applies. Parker, 139 Wn.2d

7

at 496. "[T]he scope of the arrestee's person is determined by what must *necessarily* travel with an arrestee to jail, not what an officer *decides* to take to jail." Alexander, 10 Wn. App. 2d at 694. Thus, the State bore the burden of proving that Reece was unwilling or unable to take custody of the backpack or that Vanway was unwilling to grant him custody of the item. The State did neither. Nor did it present evidence that the option was broached to either person. This is a simple failure of proof.

Indeed, the State did not introduce any evidence that Reece was unwilling or unable to take custody of Vanway's backpack while she went to jail. In Brock, our Supreme Court upheld a search of an arrestee's backpack when there was no third party available to take custody of the backpack when the arrestee was taken to jail. The court explained that "personal items that will go to jail with the arrestee are considered in the arrestee's 'possession' and are within the scope of the officer's authority to search." Brock, 184 Wn.2d at 158. Because the arrestee "ha[d] no other place to safely stow [the backpack], [he] would have to bring the backpack along with him into custody." Brock, 184 Wn.2d at 159. Not so here. Officers Tutchtone and Halbert expressed no safety concerns regarding Reece. The evidence established that he had some type of personal relationship with Vanway. This raised a question of fact as to whether the backpack *necessarily* had to go to the jail along with Vanway. The State did not present evidence on this question. Instead, the evidence was that, while officer Tutchtone was already searching the backpack, Officer Halbert told Reece that he "was no longer needed in the area and . . . asked him to move along." The

8

evidence is that the *officers* decided to take the backpack to jail with Vanway. This is insufficient. Alexander, 10 Wn. App. 2d at 694.

Accordingly, the trial court erred in denying the motion to suppress.

III

Vanway additionally asserts that RCW 69.50.4013—a statute proscribing possession of a controlled substance—violates due process by imposing strict liability for the possession of a controlled substance. However, Washington courts have upheld this statute despite challenges to its constitutionality as a strict liability offense. See State v. Bradshaw, 152 Wn.2d 528, 539-40, 98 P.3d 1190 (2004) ("Where legislative intent is so clear, we will not . . . read a mens rea element into [RCW 69.50.4013]."); State v. Schmeling, 191 Wn. App. 795, 801, 365 P.3d 202 (2015) ("We hold that RCW 69.50.4013 does not violate due process even though it makes possession of drug residue a crime without requiring any culpable mental state.").

Our Supreme Court has also upheld RCW 69.50.401, a companion statute to RCW 69.50.4013,[3] even though it does not require a mens rea element. State v. Cleppe, 96 Wn.2d 373, 380, 635 P.2d. 435 (1981) (stating that any change to RCW 69.50.401 as a strict liability offense "must be corrected by the legislature,

---

[3] RCW 69.50.4013 proscribes the following conduct:
It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter.
RCW 69.50.4013(1).
Similarly, RCW 69.50.401 provides: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(1).

not the court"). The court explained that the affirmative defense of unwitting possession has been adopted by our courts to "ameliorate[] the harshness of the almost strict criminal liability our law imposes for unauthorized possession of a controlled substance." Cleppe, 96 Wn.2d at 380-81.

Based on this authority, it is plain that RCW 69.50.4013 does not violate due process by imposing strict liability for the possession of a controlled substance. Vanway's claim to the contrary fails.

Reversed and remanded.

_____
Dwyer, J.

We concur:

_____     _____